UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-80250-CIV-RYSKAMP/VITUNAC

CITIGROUP GLOBAL MARKETS, INC.
d/b/a SMITH BARNEY, INC., and
CITIGROUP ALTERNATIVE
INVESTMENTS, LLC,

    Petitioners,

v.

D. THEODORE BERGHORST,
BERGHORST SNOWBIRD L.L.C,
BERGHORST 1998 DYNASTIC
TRUST, DEBORAH H. BERGHORST
AS TRUSTEE OF THE BERGHORST
1998 DYNASTIC TRUST AND
VECTOR MANAGED HOLDINGS L.L.C.,

    Respondents.
_____/

**ORDER GRANTING PETITION TO VACATE ARBITRATION AWARD AND
DENYING MOTION TO CONFIRM ARBITRATION AWARD**

THIS CAUSE comes before the Court pursuant to Petitioners' motion to vacate arbitration award, filed March 9, 2011 **[DE 1]**. Respondents answered the motion to vacate and cross-moved for confirmation of the award on April 15, 2011 **[DE 16]**. Petitioners replied in support of their motion to vacate and responded to the motion to confirm on May 5, 2011 **[DE 23]**. Respondents replied in support of their motion to confirm the award on May 20, 2011 **[DE 27]**. These motions are ripe for adjudication.

          **I.**          **BACKGROUND**

In November 2009, Respondents D. Theodore Berghorst, Berghorst Snowbird L.L.C.,

2

Berghorst 1998 Dynastic Trust, Deborah H. Berghorst as Trustee of the Berghorst 1998 Dynastic Trust and Vector Managed Holdings L.L.C. (collectively, the "Berghorsts") filed an arbitration against Petitioners Citigroup Global Markets Inc. d/b/a Smith Barney Inc. ("CGMI") and Citigroup Alternative Investments LLC ("CAI") (collectively, "Citigroup") with the Financial Industry Regulatory Authority ("FINRA") seeking at least $12 million in compensatory damages, *D. Theodore Berghorst et al., v. Citigroup Global Markets, Inc., et al.,* FINRA Case No. 08-04466. The Berghorsts alleged various claims related to their investments in private funds known as MAT Two LLC, MAT Three LLC and MAT Five LLC, which employed a municipal arbitrage strategy. The Berghorsts alleged fraud, negligence, breach of fiduciary duty, breach of contract and violation of federal and Florida securities laws.

In February 2009, Citigroup filed its answer in response, denying liability and requesting dismissal of the Berghorsts' claims with costs.

In March 2009, FINRA appointed two public arbitrators, Guy Stewart, Jr. ("Stewart"), the Chairman of the arbitration panel, and Richard Epstein, Esq. ("Epstein"), and one non-public or industry arbitrator, Mark Sidell ("Sidell"). At the time, Sidell was registered as a General Securities Representative with Wells Fargo, which, like Citigroup, is a registered broker-dealer and member of FINRA.

Upon his appointment as an arbitrator, Sidell was required to disclose "any circumstances which might preclude [him] from rendering an objective and impartial determination in the proceeding." FINRA Rule 12405(a). As a "reminder to the arbitrator to consider all possible disclosures" mandated by the rules, FINRA requires arbitrators to complete an Arbitrator Disclosure Checklist. Two of the questions on that checklist are as follows:

> 11. Have you ever, as a party to an arbitration or litigation, named a brokerage firm, or been named by a brokerage firm in any civil lawsuit were arbitration proceeding?
>
> 19. Has your conduct and issued an arbitration or litigation proceeding (other than a proceeding in which he served as the arbitrator)?

Sidell completed his Arbitrator Disclosure Checklist on or about March 5, 2009.

In April 2009, Citigroup's counsel objected to Epstein's service on the panel on the ground that, several years earlier, Citigroup's counsel and Epstein represented opposing parties in a FINRA arbitration. Epstein withdrew from the panel and was replaced by Eugene Kennedy ("Kennedy"). Thus, Sidell was aware that Citigroup would not hesitate to ask a member of the arbitration panel to recuse himself if an actual conflict existed or the appearance of a potential conflict existed.

In May 2009, Sidell initiated an arbitration proceeding against Wells Fargo relating to investments in his Wells Fargo individual retirement account. Although Sidell, as a party, had now named a brokerage firm in an arbitration proceeding, he did not update his answers to Question 11 on the Arbitrator Disclosure Checklist. He was required to do so by FINRA Rule 12405(b), which imposes a continuing disclosure obligation on arbitrators following their appointment:

> The obligation to disclose interests, relationships, or circumstances that might preclude an arbitrator from rendering an objective and impartial determination described in paragraph (a) is a continuing duty that requires an arbitrator who accepts appointment to an arbitration proceeding to disclose, at any stage of the proceeding, any such interests, relationships, or circumstances that arise, or are recalled or discovered.

In December 2009, Wells Fargo terminated Sidell for "failure to follow management directives and firm policy regarding procurement of firm records."  *See* Sabo Decl., Ex. L.  Wells Fargo also terminated Sidell's securities regulatory organization registrations.  According to his FINRA BrokerCheck Report, Sidell ceased to be registered with a FINRA member for the first time since 1984.

In July 2010, Sidell requested leave in his pending arbitration against Wells Fargo to assert new claims for retaliatory termination of employment and defamation.  The stakes of what would have been a dispute over a relatively modest $60,000 trading loss in Sidell's individual retirement account were now raised dramatically: Sidell sought $5 million in compensatory damages and $15 million in punitive damages on his new claims.

Sidell did not disclose any of these developments to the parties.  Nevertheless, he did make other selective updates to his profile in FINRA's database.  He stated that he had stopped working at Wells Fargo as of December 2009 and was employed by American Asset Management.  He did not reveal, however, that he had been terminated by Wells Fargo for cause or that he was suing Wells Fargo for $20 million in damages for what he contended was a wrongful discharge.  The only potential reference to this fact was a cryptic entry under the "Disclosure/Conflict Information" section of his profile, where he listed under firm name "Wachovia Securities, Inc."  Wachovia was a predecessor of Wells Fargo Advisors, LLC.  In "Details," he noted only, "Affiliated Firm Conflict."  He provided no further information about this entry in the narrative section of his profile.

In February of 2010, Wachovia brought a foreclosure action against Sidell in the Circuit

Court of Palm Beach County, Florida, seeking a forced sale of his home after he stopped paying the mortgage. According to the complaint in that action, Sidell stopped making payments on his mortgage as of July 1, 2009, shortly after he initiated his arbitration against Wells Fargo. In June 2010, Sidell filed his answer to the complaint, asserting as an affirmative defense his allegedly wrongful firing by Wells Fargo, which "constructively prevented" him from paying the mortgage.

The Berghorst arbitration hearing commenced on September 13, 2010. At the outset of the hearing, Chairman Stewart asked his two colleagues to state on the record whether they had any additional disclosures to make. Sidell stated "none for Sidell." The arbitration hearing continued over 14 days on September 13-17 and 22-24, October 25-26, and December 12-15, 2010. At no point during the hearing did Sidell disclose any of the matters discussed above. In February 2011, the arbitration panel issued a split decision, voting 2-to-1 to award the Berghorsts more than $6.3 million in compensatory damages. Kennedy and Sidell concurred in the award; Chairman Stewart dissented. Citigroup did not learn of the information Sidell failed to disclose until after the panel issued its award.

## II.     EVIDENT PARTIALITY OF ARBITRATOR

Section 10(a)(2) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(2), calls for vacatur of an arbitration award "where there was evident partiality or corruption in the arbitrators, or either of them." To satisfy the "evident partiality" standard, a party challenging an arbitration award need not show actual bias on the part of an arbitrator. *See Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 150 (1968) (arbitrators, like judges, "not

only must be unbiased but also must avoid even the appearance of bias"). Nor is it necessary to show that an arbitrator had an actual conflict of interest. It is sufficient if "the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." *University Commons-Urbana, Ltd. v. Universal Constructors Inc.*, 304 F.3d 1331, 1339 (11th Cir. 2002) (quotation omitted). When that showing has been made, vacatur is required. *See Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1201 (11th Cir. 1982) ("The *Commonwealth Coatings* holding has been interpreted as somewhat analogous to a *per se* rule or a rebuttable presumption requiring the award to be set aside once it is established that the arbitrator actually knew of, yet failed to disclose potentially prejudicial facts which could impair his judgment.") (quotation omitted).

Under the FAA's evident partiality standard, "an arbitrator is obligated to disclose those facts that 'create a reasonable impression of partiality.'" *University Commons-Urbana*, 304 F.3d at 1339 (quoting *Lifecare Int'l, Inc. v. CD Med, Inc.*, 68 F.3d 429, 433 (11th Cir. 1995)). "The partiality alleged must be 'direct, definite and capable of demonstration rather than remote, uncertain and speculative.'" *Id.* (quoting *Middlesex Mut. Ins.*, 675 F.2d at 1202). This standard is consistent with FINRA's rules, which require arbitrators to disclose "any circumstances which might preclude the arbitrator from rendering an objective and impartial determination in the proceeding." FINRA Rule 12405(a).

The undisclosed circumstances at issue here pertain to the issue of actual or perceived bias. The Arbitrator Disclosure Checklist expressly identified several issues as presumptively relevant to, or illustrative of, the issue of actual or perceived bias, including whether the arbitrator had ever been a party to an arbitration involving a brokerage firm, and whether his

conduct had ever been at issue in arbitration or litigation proceedings. Sidell's responses to Questions 11 and 19 on the Arbitrator Disclosure Checklist were rendered materially incomplete by developments during the course of his service as an arbitrator. Sidell initiated an arbitration proceeding against Wells Fargo relating to trading losses in his own individual retirement account, and, after being terminated for cause, dramatically raised the stakes of that proceeding by asserting new claims for retaliatory termination of employment and defamation - claims for which he sought $20 million in compensatory and punitive damages. Sidell's conduct - whether he "fail[ed] to follow management directives and firm policy regarding procurement of firm records" - was directly at issue in that proceeding. During this same time period, Sidell became involved in a foreclosure action regarding his own home. In that action, too, his conduct was placed at issue by virtue of the defense that he asserted to try to halt the foreclosure. The failure to disclose these matters was a violation of his continuing disclosure duty under FINRA rules. *See Olson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 51 F.3d 157, 160 (8th Cir. 1995) (vacating award under Section 10(a)(2) were arbitrator violated NASD disclosure rules, noting that outcome was "especially fair because it realizes the terms of the parties' arbitration agreement in this case").

The Berghorsts maintain that Sidell disclosed both his termination from Wells Fargo and his $20 million suit against Wells Fargo at least five times between January 2009 through August 2010. This timeline is factually inaccurate, however, given that Sidell was not terminated by Wells Fargo until December 2009 and did not sue Wells Fargo for wrongful termination and defamation until July 2010. The first three "disclosures" listed by the Berghorsts – occurring in January 2009, March 2009, and July 2009 – did not disclose, and in fact could not have

8

disclosed, the information relevant here because those supposed "disclosures" occurred months before the relevant events had even taken place. The next supposed "disclosure," Sidell's updated April 2010 Arbitrator Disclosure Report, is equally unavailing. That report disclosed that Sidell "no longer worked for Wells Fargo Advisors" and had moved to American Asset Management. What the report did not disclose was that Sidell had been terminated for cause by Wells Fargo.[1] The last of the "disclosures" is Sidell's updated August 2010 Arbitrator Disclosure Report. By then, he had not only been terminated by Wells Fargo for cause but had also sought leave to amend his Statement of Claim against Wells Fargo to assert claims for wrongful termination and defamation. Sidell's August 2010 report did not disclose these facts. Instead, the report contained a cryptic entry listing "Wachovia Securities, Inc." and noting in the "Details" column, "Affiliated Firm Conflict." Whatever that entry was intended to convey, it did not fulfill Sidell's duty to inform the parties of the circumstances surrounding his separation from Wells Fargo and that he was now suing his former employer for wrongful termination and defamation and seeking $20 million in compensatory and punitive damages.

The Berghorsts also argue that Citigroup waived its right to object to Sidell. Even if Sidell's cryptic disclosure were deemed adequate to put Citigroup "on notice" of a potential conflict, such would not be sufficient to support a finding of waiver under Eleventh Circuit precedent. The Eleventh Circuit has held that "[w]aiver applies only where a party has acted

---

[1] The Berghorsts wrongly assert that Citigroup did not act diligently upon receiving the limited information that Sidell disclosed in the April 2010 report. Citigroup's counsel pulled Sidell's publicly available BrokerCheck report to determine whether the circumstances surrounding Sidell's departure from Wells Fargo warranted further investigation. If Sidell had been terminated for cause by Wells Fargo, that fact would typically have been reflected in the report, but, for unknown reasons, it was not. Absent receiving the required disclosure from Sidell himself, Citigroup could have learned the truth only via subpoena. No cause existed for Citigroup to take that step, however, given the clear BrokerCheck report.

with full knowledge of the facts." *Levine*, 675 F.2d at 1204; *see also University Commons-Urbana*, 304 F.3d at 1340. No waiver is present here.

The undisclosed matters "create an impression of possible bias." *University Commons-Urbana*, 304 F.3d at 1338 (quoting *Commonwealth Coatings*, 393 U.S. at 149). Indeed, that is presumably why FINRA specifically highlights these exact issues in its disclosure questionnaire. An arbitrator currently embroiled in battles with a large national bank would be perceived by objective observers as likely to be partial to plaintiffs embroiled in their own dispute with a large national bank. That is especially true here, given the highly personal nature of Sidell's disputes with Wells Fargo and Wachovia and the fact that both disputes were not "remote, uncertain, and speculative." *Middlesex Mut. Ins.*, 675 F.2d at 1202. They were fresh wounds, battles Sidell was fighting during the very time he was serving as an arbitrator in this matter.

At a minimum, however, these facts at least demonstrate an appearance of partiality, which is all Citigroup must show to prevail because the integrity of the arbitral process depends on arbitrators not only being unbiased in fact but also "avoid[ing] even the appearance of bias." *Commonwealth Coatings*, 393 U.S. at 150. The facts presented create the appearance of an impartial arbitrator, and the arbitration award is therefore vacated.

### III.  PREJUDICE TO CITIGROUP

Sidell's failure to disclose his conflicts of interest was directly prejudicial to Citigroup's right to seek Sidell's recusal. Pursuant to Section 10(a)(3) of the FAA, an arbitration award is subject to vacatur if an arbitrator is guilty of "any other misbehavior by which the rights of any party have been prejudiced." FINRA Rule 12406 provides that a "party may ask an arbitrator to

recuse himself or herself from the panel for good cause.  Requests for arbitrator recusal are decided by the arbitrator who is the subject of the request."  In addition, under FINRA Rule 12407, the Director of Arbitration for FINRA may remove an arbitrator for conflict of interest or bias upon the request of a party.

Sidell's failure to disclose the information set forth above, as well as his affirmative misrepresentation at the outset of the hearing that he had no further disclosures, denied Citigroup the opportunity under Rule 12406 to ask Sidell to withdraw from the panel voluntarily and the opportunity under Rule 12407 to ask the Director of Arbitration to remove Sidell from the panel.  Given the split decision rendered by the panel, Sidell's vote was outcome determinative.  Sidell's unilateral decision to breach his duty to make full disclosure is "misbehavior by which the rights of [a] party have been prejudiced" (9 U.S.C. § 10(a)(3)), and vacatur of the award is therefore warranted.

### IV.    CONCLUSION

THE COURT, having considered the pertinent portions of the record and being otherwise fully advised, hereby

ORDERS AND ADJUDGES that the motion to vacate the arbitration award, filed March 9, 2011 **[DE 1]**, is GRANTED.  The arbitration award in *D. Theodore Berghorst et al., v. Citigroup Global Markets, Inc., et al.,* FINRA Case No. 08-04466, is VACATED.  It is further

ORDERED AND ADJUDGED that the motion to confirm the arbitration award, filed April 15, 2011 **[DE 16]**, is DENIED.  It is further

ORDERED AND ADJUDGED that the motion for hearing on the motions to vacate and

11

to confirm the arbitration award, filed May 5, 2011 **[DE 22]**, is DENIED.  The Clerk of Court shall CLOSE this case and DENY any pending motions as MOOT.

DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 20th day of January, 2012.

                                      S/Kenneth L. Ryskamp
                                      KENNETH L. RYSKAMP
                                      UNITED STATES DISTRICT JUDGE